IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: ) | Chapter 11 |
| ) | |
| NAPSTER, INC., ) | Jointly Administered |
| A Delaware Corporation, et al., ) | Case Nos. 02-11573 (PJW) |
| ) | |
| Debtors. ) | **Hearing Date: August 29, 2002 @ 4:00 p.m.** |
| ) | **(if objections filed)** |
| ) | **Objection Deadline: August 22, 2002 @ 4:00 p.m.** |

## APPLICATION FOR ORDER PURSUANT TO SECTION 328 AND 1103 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 2014 APPROVING RETENTION OF TRENWITH SECURITIES, LLC., AS INVESTMENT BANKER TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, *NUNC PRO TUNC* TO JULY 26, 2002

The Official Committee of Unsecured Creditors (the "**Committee**") of the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") hereby submits this application (the "**Application**") for an order, pursuant to sections 328(a) and 1103 of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), authorizing the Committee to retain Trenwith Securities, LLC ("**Trenwith**"), as Investment Banker to the Committee, in connection with the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), *nunc pro tunc* to July 26, 2002. In support of the Application, the Committee relies on the Affidavit of Ricardo S. Chance, sworn to August 2, 2002 (the "**Chance Affidavit**"), attached hereto as **Exhibit A**, and respectfully represent as follows:

### BACKGROUND

1. On June 3, 2002 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate

their businesses and manage their properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2. On June 14, 2002, the United States Trustee for the District of Delaware, pursuant to section 1102 of the Bankruptcy Code, appointed the Committee to represent the interests of all unsecured creditors in these Chapter 11 Cases. The Committee is comprised of the following five members: Association of Independent Music; Boies, Schiller & Flexner LLP; edel music AG; AboveNet Communications; and Integrated Archive Systems, Inc.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A). Venue of these proceedings is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

4. This Application is made by the Committee for an order, pursuant to sections 328 and 1103 of the Bankruptcy Code and Bankruptcy Rules 2014 and 2016, authorizing it to retain and employ Trenwith as Investment Banker to the Committee, *nunc pro tunc* to July 26, 2002.

5. The Committee proposes to retain Trenwith to provide investment banking services to the Committee, focusing on but not limited to, the sale of all or part of the Debtors businesses and the confirmation of a Chapter 11 plan of reorganization or liquidation that provides for such sale, on the terms and conditions substantially the same as those described in the engagement letter, dated as of July 26, 2002, between Trenwith and the Committee (the "**Engagement Letter**") attached hereto as **Exhibit B**.

6.  Trenwith is well suited to provide the type of services required by the Committee. Trenwith is an investment banking firm with offices in New York, Boston, California and Washington. Trenwith provides investment banking and financial advisory services and execution capabilities in a variety of areas, including financial restructurings. Trenwith has diverse experience and extensive knowledge advising debtors, secured and unsecured creditors, acquirors, and other parties-in-interest involved in financially distressed companies, both in and outside of bankruptcy.

7.  The Committee anticipates that Trenwith will act effectively to provide investment banking services to the Committee as needed throughout the course of these Cases.

## SCOPE OF EMPLOYMENT

8.  Trenwith's exclusive representation of the Committee in connection with these Chapter 11 Cases will include:

    (a) Analyzing and reviewing the financial and operating statements of the Debtors;

    (b) Analyzing the business plans and forecasts of the Debtors;

    (c) Preparing marketing materials for distribution to potential acquirors;

    (d) Identifying and contacting prospective acquirors for the Debtors' assets;

    (e) Managing the due diligence process with qualified bidders through closing; and

    (f) Providing testimony in court on behalf of the Committee, if necessary.

## TRENWITH IS A DISINTERESTED PERSON

9.  Trenwith has represented to the Committee that, to the best of its knowledge, it does not hold or represent any interest adverse to the Debtors' estates, other than

3

as disclosed in the Chance Affidavit and that it is a "disinterested person," as defined in section 101(14) of the Bankruptcy Code.

10. In evaluating Trenwith's "disinterested" status, subsections (A) through (C) of section 101(14) are the standards to be evaluated. Under subsection (A), a "disinterested person" is not a creditor, equity security holder, or insider of the debtor. See 11 U.S.C. § 101(14)(A). As set forth in the Chance Affidavit, Trenwith is not a creditor, equity security holder or insider of the Debtors.

11. Professionals are considered "disinterested," under § 101(14)(B), if, inter alia, they are not and were not investment bankers for any outstanding security of the debtor. See 11 U.S.C. § 101(14)(B). In addition, a "disinterested person" cannot have been, within three years of the Petition Date, an investment banker for a security of the debtor. 11 U.S.C. § 101(14)(C). To this end, courts abide by the traditional definition of an "investment banker" as "an underwriter of new issues of securities, which acts as an intermediary between the issuing corporation and the public." In re Glosser Bros., Inc., 102 B.R. 38, 41 (Bankr. W.D. Pa. 1989); see also In re Eagle-Picher Industries, Inc., 999 F.2d 969, 972 (6th Cir. 1993) (disqualifying financial advisor where firm had served as managing underwriter on outstanding revenue bonds for the debtor); In re Federated Department Stores, 44 F.3d 1310, 1313-19 (6th Cir. 1995) (disqualifying Lehman Brothers where firm had been underwriter in public offering, had been involved again as investment banker during LBO acquisition, and had identified over twenty separate financial connections to debtor). As set forth in the Chance Affidavit, Trenwith is not and was not an investment banker for any outstanding security of the Debtors and has not within three years of the Petition Date been an investment banker for a security of the Debtors.

12. Trenwith has further represented to the Committee that to the best of its knowledge, no partner, principal, associate or employee of Trenwith has any connection with, or holds any interest adverse to, the Debtors, their estates, creditors or any other party-in-interest herein or their respective attorneys in the matters on which Trenwith is proposed to be retained, except as set forth in the Chance Affidavit.

13. Based on the foregoing and the facts in the Chance Affidavit, the Committee believes that Trenwith does not hold or represent any interest adverse to the interests of the Committee or the Debtors as to the matters upon which Trenwith has been engaged, and that Trenwith is a "disinterested person" within the meaning of 11 U.S.C. § 101(14).

## COMPENSATION

**Trenwith's Application Should be Approved
Pursuant to Section 328(a) of the Bankruptcy Code**

14. The Engagement Letter provides that Trenwith will be retained pursuant to section 328(a) of the Bankruptcy Code. Section 328(a) provides, in relevant part, that the Committee, "with the court's approval may, employ or authorize the employment of a professional person under section 327 or 1103 of this title, . . . on any reasonable terms and conditions of employment, including a retainer, on an hourly basis, or on a contingent fee basis." 11 U.S.C. §328(a). Section 328 permits the compensation of professionals, including investment bankers and financial advisors, on more flexible terms that reflect the nature of their services and market conditions. As the Fifth Circuit Court of Appeals recognized in In re National Gypsum Co., 123 F.3d 861 (5th Cir. 1997):

> Prior to 1978, the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. That uncertainty continues under the present §330 of the Bankruptcy Code, which provides that the court award to professional consultants

5

reasonable compensation based on relevant factors of time and comparable costs, etc. Under present §328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

Id. at 862 (citations omitted).

15. Owing to this inherent flexibility, courts have approved similar arrangements that contain reasonable terms and conditions under section 328. The fee structure for this engagement is similar to fee agreements approved by Bankruptcy Courts throughout the United States under section 328(a).

16. As set forth in the Engagement Letter, the Committee proposes to have the Debtors' estates compensate Trenwith under section 328 of the Bankruptcy Code as follows:

    a) A fee of $50,000 (the "**Initial Fee**") for the first six (6) weeks (the "**Initial Period**") from the date of the Engagement Letter; and

    b) A fee of $25,000 for each four (4) week period thereafter that Trenwith is engaged (the "**Monthly Fees**"); and

    c) If a Transaction (as defined in the Engagement Letter) is consummated, upon the consummation of the Transaction, Trenwith shall be paid, in cash, an additional fee (a "**Transaction Fee**") equal to:

        ten percent (10.0%) of the first one million, plus
        nine percent (9%) of the second million, plus
        eight percent (8%) of the third million, plus
        seven percent (7%) of the fourth million, plus
        six percent (6%) of the fifth million, plus
        five percent (5%) of each million dollars thereafter

of the fair value of all cash, securities, property and other consideration received by the Unsecured Creditors in excess of the cash or equivalent portion of the existing Bertelsmann AG bid, which is currently estimated to be $9.0 million. There shall be no credit against the Transaction Fee for the Initial Fee and the Monthly Fees. The Transaction Fee shall be paid upon the consummation of a Transaction either (i) during the term of this Agreement or (ii) within nine months of the effective date of termination of this Agreement (such nine-month period being referred to herein as the "**Tail Period**").

    d) Alternative Flat Fee. In the event that (i) the existing Bertelsmann AG bid is withdrawn or otherwise no longer serving as the

6

"stalking horse" bid in the bankruptcy cases, and (ii) the Debtors accept a new "stalking horse" bid from a bidder unrelated to Bertelsmann AG, and (iii) a Transaction is consummated with the new stalking horse bidder or with a competing bidder based upon such new stalking horse bid, then the provisions of Paragraph 4(b) in the Engagement Letter shall not apply and Trenwith shall instead be paid a flat fee in an amount equal to $500,000.00, in addition to the Initial Fee and any Monthly Fees payable under Paragraph 4(a) of the Engagement Letter.

e) In the event that Trenwith is requested to perform additional services, such services (and any fees therefore) shall be in addition to those set forth herein and subject to further written agreement among the Committee, Debtors and Trenwith.

17. Pursuant to section 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the Orders of this Court, Trenwith will apply to the Court for the interim and final allowance of compensation and reimbursement of expenses. Because Trenwith will be compensated on a fixed monthly fee and certain transaction fees, Trenwith should not be required to maintain or provide detailed time records in connection with any of its fee applications.

### REQUEST FOR APPROVAL OF RETENTION OF TRENWITH *NUNC PRO TUNC* AS OF JULY 26, 2002

18. As set forth in the Chance Affidavit, Trenwith requests that its retention be made effective as of July 26, 2002, in order to allow Trenwith to be compensated for work it has performed for the Committee on or after its retention on July 26, 2002, but prior to the submission of this Application. The Committee submits that these circumstances are of a nature warranting retroactive approval. See, e.g., F/S Airlease II, Inc. v. Simon (In re F/S Airlease II, Inc.), 844 F.2d 99, 103 (3d Cir.), cert. denied, 488 U.S. 852 (1988); Indian River Homes, Inc. v. Sussex Trust Co., 108 B.R. 46, 51 (D. Del. 1989) (approval of debtor's employment of attorney and real estate agent *nunc pro tunc* was not an abuse of discretion).

### NOTICE

19. Notice of this Application has been given to (i) the Office of the United States Trustee for the District of Delaware, (ii) counsel for the Debtors, Jones, Day, Reavis & Pogue, North Point, 901 Lakeside Avenue, Cleveland, Ohio 44114, Attn: Richard N. Cieri, Esq., and Richards Layton & Finger, One Rodney Square, P.O. Box 551, Wilmington, DE 19899, Attn: Daniel J. DeFranceschi, Esq., and (iii) to all other parties who have requested notice in these chapter 11 Cases. Because of the nature of the relief requested, the Committee submits that such notice is sufficient and that no further notice of the relief requested in the Application need be given to any party.

## NO PRIOR REQUEST

20. No prior request for the relief sought herein has been made to this or any other Court.

## CONCLUSION

WHEREFORE, the Committee respectfully requests that the Court enter an order authorizing (iv) the Committee's retention of Trenwith as it's investment banker *nunc pro tunc* to July 26, 2002, (v) the payment and reimbursement of Trenwith's fees, subject to interim and final allowance thereof in accordance with sections 328, 330 and 331 of the Bankruptcy Code or as otherwise ordered by the Court, and (vi) granting such other and further relief as may be just and proper.

Dated: August 5, 2002

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF NAPSTER, INC.,** *et al.*

By: /s/ Helen Smith
    Helen Smith,
    Director of Business Affairs and Company
    Secretary
    Association of Independent Music
    Committee Chair